## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

KENNETH JAMES LOWE,

     Plaintiff,

                                    Case No.
                                    Hon.

v.

WALBRO LLC, a foreign limited liability company,

     Defendant.

_____

THOMAS R. WARNICKE (P47148)
Attorney for Plaintiff
Law Offices of Thomas R. Warnicke, PLLC
16291 W. 14 Mile Road, Ste 21
Beverly Hills, MI 48025
(248) 930-4411
tom@warnickelaw.com

_____

## COMPLAINT AND DEMAND FOR JURY TRIAL

     Plaintiff, Kenneth James Lowe, for his Complaint against Defendant, states

and alleges the following:

### Jurisdiction and Venue

1.     Plaintiff, Kenneth James Lowe, currently is and has been at all times

relevant hereto, a resident of the county of Tuscola, and a citizen of the

state of Michigan.

2.      Upon information and belief, Defendant Walbro LLC, (herein after referred to as "Walbro" or "Defendant") is a Delaware limited liability company, with its principal place of business and corporate headquarters in Tucson, Arizona.

3.      Walbro is a global market leader in engine management and fuel systems for outdoor power equipment, recreational, marine, and person transportation markets, and a leading supplier of high pressure aluminum die casting to various industries.

4.      Walbro manufacturers carburetors, electronic fuel injection systems, ignition systems, fuel tanks fuel pumps, valves and fuel storage and distribution systems, and offers value-added machining, electronics and assembly capabilities.

5.      Walbro is a global organization, headquartered in Tucson, Arizona, with over 2,300 employees worldwide.

6.      Walbro has ISO certified manufacturing and engineering facilities in the United States, Japan, Mexico, Thailand and China, including in Cass City, Michigan, and within the jurisdiction of this Court.

7.      Defendant Walbro is duly authorized to conduct business in the state of Michigan.

8.    The resident agent designated for Defendant to be served with legal
      process is The Corporation Company, 40600 Ann Arbor Rd. E., Suite
      201, Plymouth, Michigan 48170.

9.    This action is brought pursuant to the Michigan Elliott-Larsen Civil
      Rights Act, MCLA § 37.2101 et seq., which prohibits employment
      discrimination on the basis of age.

10.   Venue and jurisdiction are proper in this Court because of the diversity of
      citizenship between Plaintiff and Defendant; that the matter in
      controversy exceeds $75,000, exclusive of interest and costs, which is the
      sum specified by 28 U.S.C. § 1332; as well as because Defendant does
      business within the jurisdiction of this Court; and the operative facts
      giving rise to the claims set forth herein took place within the jurisdiction
      of this Court.

                    **General Allegations and Statement of Claims**

11.   Plaintiff realleges and incorporates by reference the paragraphs above.

12.   On October 13, 1976, Plaintiff began his employment with Defendant
      and/or its predecessors-in-interest, including but not limited to Walbro
      Engine Management Corporation and Walbro Engine Management LLC
      (hereinafter referred to collectively as "Defendant" or "Walbro").

13.   Plaintiff's first position with Defendant was stock handler.

3

14.     Over his career with Defendant, Plaintiff worked his way up through the corporate ranks at Defendant, which included receiving many promotions to various positions, including management positions.

15.     Plaintiff also received corresponding pay rate increases over his career with Defendant.

16.     Plaintiff also routinely received satisfactory or above annual employee evaluations.

17.     Plaintiff also received many awards from Defendant during his career with Defendant.

18.     By way of illustration and not limitation, in or about December of 1976, Plaintiff received his Basic Information Review for his first 15 days of employment and his 40 Day Final Review with Defendant, as evidenced by the document attached hereto as **Exhibit 1**.

19.     In or about January of 1990, Plaintiff received a General Pay Increase with Defendant to be effective January 1, 1990, as evidenced by the document attached hereto as **Exhibit 2**.

20.     On or about November 27, 1990, Plaintiff received his Certificate of Achievement for satisfactorily completing the Lockout/Tagout Training at Defendant, as evidenced by the document attached hereto as **Exhibit 3**.

21.     In or about January of 1991, Plaintiff received a Merit Pay Increase with Defendant to be effective January 1, 1991, as evidenced by the document attached hereto as **Exhibit 4**.

22.     In or about January of 1992, Plaintiff received a General Pay Increase with Defendant to be effective January 1, 1992, as evidenced by the document attached hereto as **Exhibit 5**.

23.     In or about January of 1993, Plaintiff received a Wage Administration Pay Increase with Defendant to be effective January 1, 1993, as evidenced by the document attached hereto as **Exhibit 6**.

24.     In or about December of 1993, Plaintiff received a Merit Pay Increase with Defendant to be effective January 1, 1994, as evidenced by the document attached hereto as **Exhibit 7**.

25.     In or about December of 1994, Plaintiff received a Merit Pay Increase with Defendant to be effective January 1, 1995, as evidenced by the document attached hereto as **Exhibit 8**.

26.     On or about August 9, 1995, Plaintiff received his Certificate of Achievement for satisfactorily completing the Lockout/Tag-Out Safety Course at Defendant, as evidenced by the document attached hereto as **Exhibit 9**.

27.   In or about December of 1995, Plaintiff received a Merit Pay Increase with Defendant to be effective January 1, 1996, as evidenced by the document attached hereto as **Exhibit 10**.

28.   In or about December of 1996, Plaintiff received a General Pay Increase with Defendant to be effective January 1, 1997, as evidenced by the document attached hereto as **Exhibit 11**.

29.   In or about December of 1997, Plaintiff received a Merit Pay Increase with Defendant to be effective January 1, 1998, as evidenced by the document attached hereto as **Exhibit 12**.

30.   In or about January of 1999, Plaintiff received a Merit Pay Increase and a Job Reclassification with Defendant to be effective January 1, 1999, as evidenced by the document attached hereto as **Exhibit 13**.

31.   In or about January of 2000, Plaintiff received a Merit Pay Increase with Defendant to be effective January 1, 2000, as evidenced by the document attached hereto as **Exhibit 14**.

32.   In or about January of 2001, Plaintiff received a Merit Pay Increase with Defendant to be effective January 13, 2001, as evidenced by the document attached hereto as **Exhibit 15**.

33.    In or about January of 2002, Plaintiff received a Merit Pay Increase with Defendant to be effective January 12, 2002, as evidenced by the document attached hereto as **Exhibit 16**.

34.    On or about February 6, 2002, Plaintiff received his Certificate of Achievement in Recognition of Professional Achievement by Successful Completion of Common Sense Manufacturing II, CSMII/TPM, as evidenced by the document attached hereto as **Exhibit 17**.

35.    On or about August 1, 2002, Plaintiff received his Certificate of Achievement in recognition of Successful Completion of Lockout – Tagout Training at TI Automotive – Machine Tool Center, as evidenced by the document attached hereto as **Exhibit 18**.

36.    In or about December 2002, Plaintiff received a Merit Pay Increase with Defendant to be effective January 11, 2003, as evidenced by the document attached hereto as **Exhibit 19**.

37.    On or about May 28, 2003, Plaintiff received his Certificate of Completion for completing Lock Out Tag Out Training given by TI Automotive, as evidenced by the document attached hereto as **Exhibit 20**.

38.    On or about June 30, 2004, Plaintiff received an offer letter from Defendant's Human Resources stating that Plaintiff had been offered the

position of Production Leader I, as evidenced by the document attached

hereto as **Exhibit 21**. The offer further indicated that Plaintiff would

retain his seniority date with the company of October 13, 1976.

39.     Plaintiff accepted the offer letter and its terms as set forth in attached

**Exhibit 21**.

40.     On or about April 29, 2005, Plaintiff submitted an Internal Application

with Defendant for the Sr. Technician position, as evidenced by the

document attached hereto as **Exhibit 22**.

41.     On or about April 29, 2005, Plaintiff submitted an Internal Application

with Defendant for the Sr. Manufacturing Engineer I position, as

evidenced by the document attached hereto as **Exhibit 23**.

42.     On or about June 17, 2005, Plaintiff submitted an Internal Application

with Defendant for both the Engineer I or Technician Specialist II

positions, as evidenced by the document attached hereto as **Exhibit 24**.

43.     On or about August 5, 2005, Plaintiff submitted an Internal Application

with Defendant for the Manufacturing Engineer 3 position, as evidenced

by the document attached hereto as **Exhibit 25**.

44.     On or about August 5, 2005, Plaintiff submitted an Internal Application

with Defendant for the Sr. Technician position, as evidenced by the

document attached hereto as **Exhibit 26**.

45.  On or about August 18, 2005, a Personnel Action Notice was requested to promote Plaintiff from Production Leader I to Manufacturing Engineer II, with a salary increase from $40,000 to $44,000, as evidenced by the document attached hereto as **Exhibit 27**.

46.  On or about August 18, 2005, Defendant's Management, and or Human Resources approved the Personnel Action Notice for Plaintiff's promotion, as evidenced by attached **Exhibit 27**.

47.  Sometime during the Winter Semester of 2006, Plaintiff received his CADD Program Skill Record from the Sanilac Career Center Community Enrichment, as evidenced by the document attached hereto as **Exhibit 28**.

48.  On or about March 22, 2006, Plaintiff received a Certificate of Training for successfully completing 40 hours of training in Computer-aided Design and Drafting, as evidenced by the document attached hereto as **Exhibit 29**.

49.  On or about August 17, 2006, Plaintiff received his Certificate for successfully completing the Programmable Logic Controller class, as evidenced by the document attached hereto as **Exhibit 30**.

50.  On or about June 17, 2008, Plaintiff received a Certificate of Accomplishment for completing a training session in Focus Materials Management/Storm Water Pollution Prevention, Lockout/Tagout, and

Confined Spaces, as evidenced by the document attached hereto as **Exhibit 31**.

51. On or about October 5, 2009, Plaintiff received his Certificate of Completion for successfully completing training in the following areas: Ergonomics, Hearing Protection, Hazmat/Labeling, LOCO/Robotic Safety, Bloodborne Pathogens, Stormwater Pollution Prevention, and Universal Waste/Asbestos Management, as evidenced by the document attached hereto as **Exhibit 32**.

52. On or about July 8, 2010, Plaintiff's supervisor at the time, Rob Hartwick, submitted a Promotion Recommendation Form requesting Plaintiff be promoted from Manufacturing Engineer II to Manufacturing Engineer III, as evidenced by the document attached hereto as **Exhibit 33**.

53. The Promotion Recommendation evidenced by **Exhibit 33** was approved by Defendant in July of 2010.

54. On October 12, 2011, Plaintiff received the very first write-up that he ever received during his employment with Defendant.

55. However, his Manager at the time, Rob Hartwick, sent an internal email two months later to Defendant's Human Resources (via Shelli Herford), in which he stated: "I believe we dropped the ball on this one and should

not have written him up for it," and "I would like this write-up to be removed from his file and to turn this issue to only a verbal consultation," as evidenced by the document attached hereto as **Exhibit 34**.

56. On or about March 23, 2012, Plaintiff received his Lockout/Tagout Annual Employee Assessment, as evidenced by the document attached hereto as **Exhibit 35**.

57. In or about September of 2012 Plaintiff's Supervisor at the time, Rob Hartwick, submitted a Promotion Recommendation Form requesting that Plaintiff be promoted from Manufacturing Engineer III to Sr. Manufacturing Engineer, which was approved by Management, and or Human Resources, as evidenced by the document attached hereto as **Exhibit 36**.

58. On or about September 11, 2012, Plaintiff received his Certificate of Participation for satisfactorily participating in training on the following topics: OSHA Hazcom, Hazardous Waste Drum Labeling, Universal Waste, DOT Hazmat, Storm Water Permit/Operator, Bloodborne Pathogens, Lockout-Tagout, and Robot Safety, as evidenced by the document attached hereto as **Exhibit 37**.

59. On or about June 7, 2013, Plaintiff received a written reprimand.

60.   This written reprimand was only the second written reprimand Plaintiff received during his employment with Defendant.

61.   The June 7, 2013 written reprimand was the last written reprimand Plaintiff received from Defendant.

62.   From June 8, 2013 through Plaintiff's termination from employment from Defendant in 2018, Plaintiff did not receive any written reprimand(s) from Defendant.

63.   On or about August 23, 2013, Plaintiff received his Lockout/Tagout Annual Employee Assessment, as evidenced by the document attached hereto as **Exhibit 38**.

64.   On or about March of 2014, Plaintiff's Supervisor at the time, John Graves, submitted a Promotion Recommendation Form requesting that Plaintiff be promoted from Sr. Manufacturing Engineer I to Area Manager, which was approved by Defendant's Management, and or Human Resources, as evidenced by the document attached hereto as **Exhibit 39**.

65.   On or about December 16, 2014, Plaintiff's Supervisor at the time, John Graves, submitted a Personnel Action Notice to request a merit-based change of pay for Plaintiff from his salary of $77,584 to $85,500, which

was reviewed and approved by Defendant's Management and or Human Resources, as evidenced by the document attached hereto as **Exhibit 40**.

66.    One of the most significant awards that Plaintiff received from Defendant was the 40-Year Award, which was given to Plaintiff in October of 2016 in recognition of Plaintiff's 40-years of devoted and dependable service by Plaintiff on behalf of Defendant.

67.    Unfortunately, Plaintiff's receipt of the 40-Year Award was marred by the statements and conduct of Plaintiff's Supervisor at the time, Tom Davidson.

68.    Specifically, Mr. Davidson said to Plaintiff when he received the award that Plaintiff was an old man, that Plaintiff has been working at the company for a very long time and that Plaintiff should be retiring soon.

69.    Mr. Davidson's statements were age-based comments that evidenced a discriminatory animus against Plaintiff because of Plaintiff's age.

70.    On or about June 26, 2017, Plaintiff received a C-TPAT Training Certificate for completion of the C-TPAT Business Partner Training Course, as evidenced by the document attached hereto as **Exhibit 41**.

71.    On or about June 26, 2017, Plaintiff received a C-TPAT Training Certificate for completion of the C-TPAT Container Sealing Training Course, as evidenced by the document attached hereto as **Exhibit 42**.

72.     On or about June 26, 2017, Plaintiff received a C-TPAT Training

Certificate for completion of the C-TPAT Container/Conveyance

Training Course, as evidenced by the document attached hereto as

**Exhibit 43**.

73.     On or about June 26, 2017, Plaintiff received a C-TPAT Training

Certificate for completion of the C-TPAT Personnel Security Training

Course, as evidenced by the document attached hereto as **Exhibit 44**.

74.     On or about June 26, 2017, Plaintiff received a C-TPAT Training

Certificate for completion of the C-TPAT Information Technology

Training Course, as evidenced by the document attached hereto as

**Exhibit 45**.

75.     On or about June 26, 2017, Plaintiff received a C-TPAT Training

Certificate for completion of the C-TPAT Operations Training Course, as

evidenced by the document attached hereto as **Exhibit 46**.

76.     On or about June 26, 2017, Plaintiff received a C-TPAT Training

Certificate for completion of the C-TPAT Physical Access Training

Course, as evidenced by the document attached hereto as **Exhibit 47**.

77.     On or about June 26, 2017, Plaintiff received a C-TPAT Training

Certificate for completion of the C-TPAT Scrutiny Triggers Training

Course, as evidenced by the document attached hereto as **Exhibit 48**.

78.   On or about June 26, 2017, Plaintiff received a C-TPAT Training Certificate for completion of the C-TPAT Warehouse/Cargo Training Course, as evidenced by the document attached hereto as **Exhibit 49**.

79.   On or about June 26, 2017, Plaintiff received a C-TPAT Training Certificate for completion of the C-TPAT Overview Training Course, as evidenced by the document attached hereto as **Exhibit 50**.

80.   On or about June 26, 2017, Plaintiff received a C-TPAT Training Certificate for completion of the C-TPAT Threat Awareness Training Course, as evidenced by the document attached hereto as **Exhibit 51**.

81.   In addition to all the awards, promotions, certificates, and pay rate increases set forth above, Plaintiff also received annual Employee Performance Evaluations/Reports during his employment with Defendant, as evidenced by the Evaluations/Reports attached hereto as **Exhibit 52**.

82.   Plaintiff's annual Evaluations/Reports were always satisfactory or above.

83.   In addition to the discriminatory age-based comments made by Mr. Davidson when Plaintiff received his 40-Year Award, Mr. Davidson also told Plaintiff thereafter that Plaintiff's energy and work ethic had seemed to diminish, which was probably because of Plaintiff's age.

84.  During the last few years of his employment with Defendant, Plaintiff was aware and observed that Defendant had fired many of its older workers, as well as refusing to allow Plaintiff and other older employees to move into higher positions, while doing so for younger employees.

85.  On one occasion, Mr. Davidson questioned Plaintiff as to whether he had the desire or energy to continue performing in such a high-stress job, especially at his age and when he and Defendant would be demanding increased production and more work hours from Plaintiff.

86.  Mr. Davidson also asked Plaintiff on multiple occasions why he wanted to work so hard when he was already at retirement age.

87.  Mr. Davidson belittled and harassed Plaintiff by telling Plaintiff that he wouldn't be surprised at Plaintiff's age if Plaintiff just came in to work one day and said I quit.

88.  Mr. Davidson and other members of Defendant's management team were predisposed to discriminate against Plaintiff and other older employees because of their age and acted on that predisposition by terminating many of them.

89.  Defendant engaged in a pattern and practice of targeting and terminating older employees due to their age, including Plaintiff.

90. On June 28, 2018, Plaintiff was terminated from his employment by Defendant.

91. Mr. Davidson was Plaintiff's Supervisor when Plaintiff was terminated.

92. Mr. Davidson made and/or contributed to the decision to terminate Plaintiff.

93. Plaintiff was informed of his termination by Mr. Davidson.

94. Plaintiff asked Mr. Davidson if there was any legitimate business reason why he was being terminated and Mr. Davidson did not provide him with any answer or reason.

95. Plaintiff then accused Mr. Davidson of terminating him because of his age.

96. Mr. Davidson failed to refute or in any way disclaim, rebut, dispute, contravene, repudiate, or counter Plaintiff's accusation that he was terminated because of his age.

97. Rather, Mr. Davidson just smirked and told Plaintiff that Plaintiff had been with the company for many years, that Plaintiff was already at retirement age anyway, and that it was time for the company to go in a new direction and for Plaintiff to move on.

98. The reason for Plaintiff's termination was because of his age.

99.   Upon Plaintiff's termination, Defendant presented Plaintiff with a document entitled "<u>Separation Agreement and General Release</u>," as evidenced by the document attached hereto as **Exhibit 53**.

100.   In Section 2 of the Separation Agreement and General Release, Defendant offered to make certain payments to and/or on behalf of Plaintiff, including making a lump sum separation payment to Plaintiff in the amount of $91,657.04 (less applicable taxes and deductions).

101.   However, in exchange for Defendant's payments to Plaintiff set forth in Section 2 of Separation Agreement and General Release, Section 3 of the Agreement required Plaintiff to release and forever discharge, to the maximum extent permitted by law, Defendant and each of the other "Releasees" defined below, from any and all claims, causes of action, complaints, lawsuits or liabilities of any kind.

102.   The Separation Agreement and General Release specifically required that Plaintiff release and forever discharge Defendant from claims of discrimination based on age.

103.   Plaintiff did not sign the Separation Agreement and General Release.

104.   Rather, Plaintiff chose to not release, discharge and/or waive his claims of discrimination against Defendant based upon age.

105.  Instead, Plaintiff has decided to proceed forward with his claims of age discrimination against Defendant.

106.  The duration of time between Plaintiff's date of hire with Defendant and his termination by Defendant was approximately 41 years, 8 months and 15 days.

107.  Plaintiff received only two written reprimands during his employment with Defendant.

108.  Plaintiff was never subjected to any progressive discipline during his employment with Defendant.

109.  Plaintiff was never put on a Performance Improvement Plan, Performance Action Plan, or any other similar type of Plan that set forth deficiencies in Plaintiff's performance and/or a plan of action for Plaintiff to succeed at his job with Defendant, at any time during his employment with Defendant.

110.  At no time during Plaintiff's employment with Defendant was Plaintiff ever suspended by Defendant.

111.  At no time during Plaintiff's employment with Defendant was Plaintiff ever terminated by Defendant and then re-hired by Defendant.

112.  At no time before the moment Plaintiff was informed that he was being terminated by Defendant did Plaintiff ever receive from Defendant any

written communication or warning that his job was ever jeopardy or that he was ever at risk for termination.

113. Plaintiff's position at the time of his termination was Area Manager.

114. Plaintiff was qualified for his position at the time of his termination.

115. Plaintiff possessed the appropriate educational level, experience and general skills necessary to perform his job as Area Manager.

116. Plaintiff was replaced by a younger employee and/or was treated differently than similarly-situated persons outside of his protected class.

## COUNT 1

## VIOLATION OF ELLIOTT-LARSEN CIVIL RIGHTS ACT

## MCL 37.2101 ET SEQ.

### (Age Discrimination – Wrongful Termination)

117. Plaintiff repeats and re-alleges the allegations set forth above.

118. At all times during his employment with Defendant, Plaintiff was qualified for the positions he held, including his position at the time of his termination.

119. At all material times, Plaintiff was an employee and Defendant was his employer, covered by and within the meaning of the Michigan Elliott-Larsen Civil Rights Act, MCL 37.2101 et seq. (the "Act").

120.    The Act prohibits an employer from discriminating against, discharging or retaliating against an employee on the basis of age.

121.    As set forth above, Plaintiff suffered unlawful discrimination and termination by Defendant on the basis of his age.

122.    Plaintiffs age was a determining factor or it was one factor that made a difference in Defendant's decision to terminate Plaintiff.

123.    Defendant's actions were also made in an intentional, willful and malicious disregard for Plaintiff's rights.

124.    As set forth above, there is both direct evidence and circumstantial evidence that Defendant's decision to terminate Plaintiff was due, at least in part, to Plaintiff's age.

125.    As a result of Plaintiff's discharge, he has sustained injuries and damages including, but not limited to, loss of earnings and earning capacity; loss of job benefits, including insurance coverages, bonuses, 401k, etc., loss of career opportunities, humiliation and embarrassment, mental and emotional distress, anxiety, indignation, depression, sleeplessness, weight loss and/or gain, loss of the ordinary pleasures of everyday life, inability socialize and enjoy his community, including the right to a gainful occupation of choice.  Plaintiff if also entitled to additional

compensatory, exemplary and/or punitive damages, and other consequential and incidental damages.

WHEREFORE, Plaintiff requests that this Court enter judgment against Defendant as follows:

    a.  Compensatory damages in whatever amount Plaintiff is found to be entitled including but not limited to past, present and future pain and suffering, physical, mental and emotional distress;

    b.  Exemplary and/or punitive damages in whatever amount Plaintiff is found to be entitled;

    c.  Judgment economic damages, including for lost wages and fringe and pension benefits, past and future, in whatever amount Plaintiff is found to be entitled;

    d.  An aware of interest, costs, and reasonable attorney fees;

    e.  An injunction prohibiting any further acts of retaliation or discrimination; and

    f.  Whatever other equitable relief appears appropriate at the time of final judgment, including reinstatement.

Respectfully submitted,


*/s/  Thomas R. Warnicke*
Thomas R. Warnicke (P47148)
Attorneys for Plaintiff
Law Offices of Thomas R. Warnicke, PLLC
16291 W. 14 Mile Road, Suite 21
Beverly Hills, MI 48025
(248) 930-4411
tom@warnickelaw.com

## **JURY DEMAND**

Plaintiff hereby demands a jury trial in this action.


Respectfully submitted,


*/s/  Thomas R. Warnicke*
Thomas R. Warnicke (P47148)
Attorneys for Plaintiff
Law Offices of Thomas R. Warnicke, PLLC
16291 W. 14 Mile Road, Suite 21
Beverly Hills, MI 48025
(248) 930-4411
 tom@warnickelaw.com