UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH LOWE,

        Plaintiff,

v                                                                               Case No. 18-12835
                                                                               Honorable Thomas L. Ludington

WALBRO LLC,

        Defendant.
_____/

**ORDER GRANTING MOTION FOR SUMMARY JUDGMENT**

On September 12, 2018, Plaintiff Kenneth James Lowe filed a complaint against Defendant Walbro LLC ("Walbro"). ECF No. 1. According to the complaint, Plaintiff was employed by Defendant from 1976 until 2018. Plaintiff alleges that Defendant terminated his employment in 2018 based on Plaintiff's age and by so doing, violated the Elliott-Larsen Civil Rights Act. On August 13, 2019, Defendant filed a motion for summary judgment. ECF No. 20. For the following reasons, the motion will be granted.

**I.**

Plaintiff was born in 1958. ECF No. 26 at PageID.614. In 1976 at the age of 18, he began working for Walbro as a stock handler. ECF No. 20-4 at PageID.440. Walbro, as a business enterprise, is involved in "engine management and fuel systems for the outdoor power equipment, recreational, marine, and personal transportation markets." ECF No. 20 at PageID.403. Soon after starting at Walbro as a stock handler, Plaintiff began working as a machinist. ECF No. 20-4 at PageID.441. He continued to work in this same position for over twenty years until he became a "senior machinist" which involved the same job responsibilities, but with an elevated title. In 2004, he became a production leader. *Id.* Ten years later, he was promoted to the position of Area Manager. *Id.* at PageID.451.

As an Area Manager, Plaintiff was responsible for managing the maintenance of Walbro's entire facility in Cass City, Michigan. This included maintaining blow molding machines, assembly line machines, and robotics. ECF No. 20-5 at PageID.497. Plaintiff was also responsible for managing the janitorial staff and maintaining the facility's wastewater treatment room, the finishing room, and overseeing general maintenance. *Id.*; ECF No. 20-4 at PageID.451. Two of the employees that reported to Plaintiff were Rick Osterbeck and Nate Windsor. ECF No. 20-4 at PageID.456. Osterbeck performed maintenance on the blow molding machines and Windsor performed maintenance on robotics.

**A.**

According to Adam Arkells, Walbro's Vice President of Human Resources, the Cass City facility began to undergo a significant change in approximately 2009 or 2010. ECF No. 26-3 at PageID.680. The plant had previously been used to produce carburetors, but had evolved primarily, to blow molding and robotics. *Id.* The production of carburetors differs significantly from blow molding and robotics. Consequently, different maintenance skills were required from Plaintiff and other machinists.

In 2016, Walbro hired Tom Davidson as the General Manager of the Cass City facility. ECF No. 20-5 at PageID.495. Soon after joining Walbro, Davidson noticed that Plaintiff's understanding of the blow molding machines and robotics was limited. *Id.* at PageID.498. According to Davidson, Plaintiff relied heavily upon Osterbeck and Windsor in the maintenance of the machines and robotics and did not attempt to become more accomplished at such maintenance himself. *Id.*

In September 2016, Davidson and Arkells began discussing Plaintiff's "noticeable lack of capability to perform certain aspects of the position as a result of the changes in the evolution of

[the] plant." ECF No. 26-3 at PageID.679. According to Davidson, Plaintiff was not meeting expectations and not succeeding. ECF No. 26-1 at PageID.650. The topic of Plaintiff's performance was further discussed by Walbro's executive team at an offsite meeting. ECF No. 26-3 at PageID.679. At this meeting, the executive team discussed a reduction in the work force and "salaried positions throughout the company globally." *Id.* It was determined that Plaintiff would remain in his position. According to Arkells, they hoped that Walbro could assist Plaintiff in "advancing his skill sets." *Id.* at PageID.680.

Soon after this meeting, Davidson removed Osterbeck and Windsor from reporting to Plaintiff because he believed that Plaintiff was "overwhelmed." ECF No. 26-1 at PageID.648-649. ("I didn't expect him to know everything all the time, but it became pretty consistent that he didn't know what was going on when it came to the maintenance, the up or down time of the machines on the blow molding side."). Instead, Osterbeck and Windsor reported directly to Davidson. This left Plaintiff with only the "non-tank portion of the building" to manage and all general facility maintenance. *Id.* at PageID.649-650. According to Davidson, this reduction of Plaintiff's work responsibilities did not result in Plaintiff's improved performance. Plaintiff was "not taking ownership of all of the equipment," which required other departments to come and provide assistance. *Id.* at PageID.651.

**B.**

During a staff meeting in 2016, Tim Grifka, a Vice President, presented Plaintiff with a recognition award for working at Walbro for 40 years. ECF No. 26-10 at PageID.822-823. Plaintiff claims that when he sat down after receiving his award, Davidson said "Old man, you been here longer than I am old. Aren't you ready to retire?" ECF No. 26-10 at PageID.823. Davidson then laughed. The comment was such that others in the room could hear the comment. *Id.*

Plaintiff testified that after this incident, Davidson began making various comments about his age. This included comments such as "[Y]ou're losing a step," "You're getting older," and "You work ten to 11 hours a day, why you coming in Saturday?" *Id.* at PageID.835.

## C.

In March 2017, Walbro hired Debby Rard to be the Senior Human Resources Manager at the Cass City facility. While reviewing the Cass City facility's organizational chart, she discovered that no one was directly reporting to Plaintiff despite the fact that he was an Area Manager. Instead, he was only managing a small group of janitors. ECF No. 26-4 at PageID.700. This "didn't make good business…sense" to Rard. She recommended to Arkells and Davidson that Plaintiff's role be eliminated. ECF No. 26-4 at PageID.710.

During this time, Rard began receiving complaints about Plaintiff's inappropriate behavior. ECF No. 20-2. This included allegations of bullying, vulgarity, and sexual innuendos. She kept a log of these reports which consists of six separate complaints from five separate employees. The latest complaint was by Osterbeck. He claimed that Plaintiff made a statement containing a sexual innuendo about Osterbeck and another employee when he told Osterbeck, "Rick, you suck Bill raw." *Id.* Plaintiff then "followed with a tongue and check [sic] inappropriate gesture." *Id.* This occurred the week after Walbro had conducted anti-harassment training at Cass City. Following this complaint from Osterbeck, Rard contacted Arkells to ask him for "some direction." ECF No. 26-4 at PageID.716.

Plaintiff's interaction with Osterbeck was the "last straw" for Arkells. ECF No. 26-3 at PageID.690. Arkells testified

> [T]he culmination of events coming forward to this point of the behavior issues from a manager of the company…immediately following anti-harassment training that he attended that specifically described not allowing…the behavior he

represented[,] I don't think we would have entertained the concept of a different role in the company at that point.

*Id.* According to Davidson, management was about to eliminate Plaintiff's position, regardless of Plaintiff's alleged sexual harassment. Davidson testified

> [T]he position was being eliminated and that was already in motion when additional incidents occurred after some harassment training was completed. And it just, if anything, accelerated it, but not by much…

ECF No. 26-1 at PageID.658.

It was determined that Plaintiff's position would be eliminated. On June 28, 2018, Davidson asked Plaintiff to meet him in Davidson's office. Rard was also present. She had prepared a script for Davidson which Davidson had previously reviewed with Arkells. ECF No. 26-1 at PageID.661. Davidson read the script to Plaintiff, informing Plaintiff that his position at Walbro was being eliminated. *Id.* Plaintiff's previous duties were to be performed by Osterbeck and another employee.

According to Plaintiff, Davidson made a comment about Plaintiff's age during the termination meeting. Plaintiff's deposition provides:

> I did ask Tom [Davidson] about why -- why was I terminated? Was it my job? Was I not doing the job?...And he just -- basically he didn't answer me. He just said, well, you're kind of getting up there in years, you're at retirement age, you go one way and the company's going the other.

ECF No. 26-10 at PageID.831.

During her deposition, Rard disagreed with Plaintiff's recollection on this point. She testified that Mr. Lowe had not asked about his age. She explained that she would have remembered that because "[t]hat's something that I would be very sensitive to…I'm 57 years old too and when you get to be that age you -- you just are." ECF No. 26-4 at PageID.702. She also testified that Davidson did not say that Plaintiff was near retirement age.

**II.**

Defendant has now filed a motion for summary judgment. A motion for summary judgment should be granted if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party has the initial burden of identifying where to look in the record for evidence "which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the opposing party who must set out specific facts showing "a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (citation omitted). The Court must view the evidence and draw all reasonable inferences in favor of the non-movant and determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id*. at 251–52.

**III.**

The Michigan Elliott-Larsen Civil Rights Act ("ELCRA") provides

> An employer shall not…[f]ail or refuse to hire or recruit, discharge, or otherwise discriminate against an individual with respect to employment, compensation, or a term, condition, or privilege of employment, because of religion, race, color, national origin, age, sex, height, weight, or marital status.

MCL 37.2202(1). Plaintiff contends that Defendant violated ELCRA when Defendant allegedly terminated his employment due to his age.

Discriminatory treatment can be established by direct evidence or indirect and circumstantial evidence. *Sniecinski v. Blue Cross & Blue Shield of Michigan*, 469 Mich. 124, 132 (2003). Plaintiff has not demonstrated that he can establish his claim using either direct or indirect evidence.

**A.**

The Michigan Supreme Court has defined direct evidence as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Sciecinski v. Blue Cross and Blue Shield of Michigan*, 666 N.W.2d 186, 133 (2003)(quotations omitted). The court further held "In a direct evidence case involving mixed motives, i.e., where the adverse employment decision could have been based on both legitimate and legally impermissible reasons, a plaintiff must prove that the defendant's discriminatory animus was more likely than not a 'substantial' or 'motivating' factor in the decision." *Id.*

Plaintiff has not provided direct evidence of age discrimination by Defendant. All that he has presented to substantiate his claim is that Davidson made certain comments to him regarding Plaintiff's age. Plaintiff testified that Davidson was the only person whom he believed discriminated against him. ECF No. 26-10 at PageID.834. This does not account for the testimony of Arkells and Rard establishing that they and others in Walbro's managment had decided to terminate Plaintiff's position because it was not justified for the operation of the plant. This is further supported by the fact that Defendant did not hire a replacement, but instead disbursed his previous duties between two employees. ECF No. 20-3 at PageID.432-433.

Plaintiff claims that "the Sixth Circuit has considered discriminatory statements made by the offending party combined with other facts" to demonstrate discriminatory animus. ECF No. 26 at PageID.621. He then cites to an unpublished case, *Howley v. Federal Express Corporation*, in which the Sixth Circuit reversed a district court's grant of summary judgment. *Howley v. Federal Express Corporation*, 682 Fed.Appx. 439 (6th Cir. 2017). In that case, the plaintiff was terminated after receiving three disciplinary actions within nine months of a new supervisor starting. Plaintiff identified three statements made by his supervisor that he alleged demonstrated discrimination against him due to his age. The Sixth Circuit found that there was a triable issue of

fact as to whether the defendant's termination of the plaintiff's employment was for discriminatory reasons. However, the court cautioned that

> Under normal circumstances, the alleged remarks made by [plaintiff's supervisor] might be viewed as simply too attenuated from the termination process to constitute direct evidence of discrimination. And we generally recognize that statements about the impending retirement of employees are not, by themselves, sufficient to constitute direct evidence of discrimination.

*Howley*, 682 Fed.Appx. at 443. The court ultimately determined that there was a triable issue of fact due to "suspicious circumstances surrounding [plaintiff's] termination." These specifically were the three disciplinary actions that the court found to be questionable due to the severity of the discipline.

Similar suspicious circumstances do not exist in this case. As testified to by Davidson, Rard, and Arkells, Walbro upper management had determined that Plaintiff's position was unnecessary and decided to eliminate it and it has not been reinstated. Even if Davidson did in fact make the comments regarding Plaintiff's age, these are too attenuated to rise to the level of direct evidence of discrimination when Walbro decided to eliminate the position.

Plaintiff has not presented direct evidence of age discrimination against him.

**B.**

A plaintiff may prove age discrimination by presenting indirect evidence under the burden-shifting approach articulated in *McDonnell Douglas*. *McDonnell Douglas v. Green*, 411 U.S. 792 (1973); *Sniecinski*, 666 N.W.2d at 193. To establish a prima facie case, the plaintiff must establish that (1) he belongs to a protected class, (2) he suffered an adverse employment action, (3) he was qualified for the position, and (4) his failure to obtain the position occurred under circumstances giving rise to an inference of unlawful discrimination. *Sniecinski*, 666 N.W.2d at 193. A plaintiff can satisfy the fourth element by demonstrating that he was "treated differently from similarly

situated employees outside the protected class." *Mitchell v. Vanderbilt Univ.*, 389 F.3d 177, 181 (6th Cir. 2004).

If the plaintiff succeeds in establishing a prima facie case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory rationale for the adverse employment action. *In re Rodriguez*, 487 F.3d 1001, 1008 (6th Cir. 2007). Once the employer does so, the burden shifts back to the plaintiff to demonstrate that the articulated reason is a mere pretext for discrimination. *Id.* Pretext may be demonstrated by "showing that the proffered reason (1) has no basis in fact, (2) did not actually motivate the defendant's challenged conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000).

**1.**

Plaintiff fulfills the first three elements of the prima facie case, but not the fourth. He claims that an employee, Jake Germain, is similarly situated to him and is outside the protected class because he is less than 30 years old. ECF No. 26 at PageID.624-625. However, Plaintiff and Germain worked in very different positions. Germain is a blow molding technician that reports to Osterbeck. ECF No. 26 at PageID.624-625. He does not manage any personnel, does not handle general facility maintenance, and does not "interface with outside contractors" as Plaintiff did. Germain is a technician, a very different role from Plaintiff's supervisory role as Area Manager. Plaintiff has provided no other evidence to indicate that he fulfills the fourth element of his prima facie case.

**2.**

Even if Plaintiff were to fulfill his prima facie case, he cannot demonstrate that Defendant's actions were mere pretext. As explained above, Defendant eliminated Plaintiff's position and did

not replace him with another employee. This supports Defendant's assertion that Plaintiff's employment was not terminated due to his age.

Plaintiff contests the veracity of Rard's log of complaints lodged against Plaintiff, claiming that it indicates pretext. However, as provided by Davidson, Rard, and Arkells, the process of eliminating Plaintiff's position had already begun. Plaintiff's latest comment and behavior to Osterbeck insinuating oral sex simply "accelerated the process," but was not a deciding factor. ECF No. 26-1 at PageID.658. Rard testified that she saw no need to further investigate the claims against Plaintiff because management had already decided to eliminate Plaintiff's position. ECF No. 20-8 at PageID.561.

**IV.**

Accordingly, it is **ORDERED** that Defendant's motion for summary judgment, ECF No. 20, is **GRANTED**.

It is further **ORDERED** that Plaintiff's complaint, ECF No. 1, is **DISMISSED**.

Dated: October 29, 2019                           s/Thomas L. Ludington
                                                  THOMAS L. LUDINGTON
                                                  United States District Judge