UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH JAMES LOWE,

   Plaintiff,          Case No. 1:18-cv-12835

v.                Honorable Thomas L. Ludington
                 United States District Judge
WALBRO, LLC,

   Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION *IN LIMINE***

In this employment-discrimination case, Plaintiff Kenneth James Lowe alleges Defendant Walbro, LLC discharged him because of his age after 42 years of employment. Defendant, on the other hand, alleges that Plaintiff's position became unnecessary as its business changed and Plaintiff was unable to perform duties related to the new business. The case is scheduled for a jury trial beginning on October 24, 2023, and Defendant has filed a motion seeking to exclude two types of evidence: (1) evidence related to a younger employee Plaintiff alleges was similarly situated to him; and (2) evidence related to a training program Defendant implemented 11 months after Plaintiff was discharged. For reasons explained below, Defendant's Motion will be granted in part and denied in part.

**I.**

The relevant facts of this case are neatly summarized by the Sixth Circuit:

> [Kenneth] Lowe, who was born in 1958, began working for Walbro as a stock handler at the age of 18. Over the course of his 41-year career with the company, he was promoted on several occasions. At the time that he was fired, he held the title of Area Manager, a position that he assumed in 2014.
>
> Walbro describes itself as "a global market leader in engine management and fuel systems for the outdoor power equipment, recreational, marine, and

personal transportation markets." It is headquartered in Arizona, but has offices in Cass City, Michigan (where Lowe worked throughout his career with Walbro) as well as in various other countries.

As Area Manager, Lowe was responsible for managing the maintenance of the entire Cass City facility. His responsibilities included maintaining blow-molding machines, assembly-line machines, and robotics equipment, as well as overseeing the janitorial staff and maintaining other areas of the plant.

According to Walbro, the work of the Cass City facility began to change significantly around 2009 or 2010. Previously, the plant had largely been used to produce carburetors, but later it evolved to focus primarily on blow molding (a process used to manufacture hollow plastic products) and robotics.

In June 2016, Walbro hired 35-year-old Tom Davidson as General Manager of the Cass City facility. Davidson testified that, soon after he assumed this role, he noticed that Lowe's understanding of robotics and blow molding was limited. According to Davidson, Lowe relied heavily on two subordinates—Rick Osterbeck and Nate Windsor—for the maintenance of the blow-molding machines and robotics equipment, and Lowe did not attempt to improve his own abilities in these areas.

Approximately six months later, Davidson removed Osterbeck and Windsor from reporting to Lowe. Davidson said that he did so because he believed that Lowe was "overwhelmed." Osterbeck and Windsor instead reported directly to Davidson after this change was made. Lowe was left managing only one portion of the building as well as conducting general facility maintenance. Davidson testified that Lowe's performance did not improve following this reorganization.

Lowe alleges that, throughout the roughly two-year period of time that he and Davidson overlapped at Walbro, Davidson made a series of disparaging statements about Lowe's age. For example, in October 2016, Lowe received an award recognizing his 40 years of employment with Walbro. According to Lowe, after he received the award and sat back down, Davidson said, at a volume where others in the room could hear him: "Old man, you been here longer than I am old. Aren't you ready to retire?" Lowe further testified that Davidson made "at least a dozen" statements about Lowe's age over the time period when both men were employed at the company. These included comments such as referring to Lowe as an "[o]ld man" and saying that he was "losing a step."

In March 2018, Walbro hired Debby Rard to serve as the Senior Human Resources Manager at the Cass City facility. Rard testified that, soon after she began working for Walbro, she was reviewing the company's organizational charts when she noticed that Lowe was serving as the Area Manager but had only a few janitors reporting directly to him. She concluded that the retention of this position

did not make good business sense for Walbro and recommended to the company's leadership that Lowe's position be eliminated.

Rard also testified that, around this time, she began to receive complaints that Lowe had engaged in inappropriate behavior, such as bullying, vulgarity, and sexual innuendoes. She created a spreadsheet titled "Observed Behavior - Ken Lowe, Facilities Manager CAS" that catalogued six incidents of alleged inappropriate behavior regarding Lowe, which spanned from 2015 to 2018. The final incident listed on the spreadsheet took place on June 19, 2018 and was reported by Osterbeck. Osterbeck stated that, at a meeting involving Lowe, Osterbeck, and another employee, Lowe had said: "Rick, you suck Bill raw" and made an "inappropriate gesture."

Around this time—although the exact date is not clear from the record—Walbro made the final decision to terminate Lowe. According to Adam Arkells, Walbro's Vice President of Human Resources, this was a group decision, made by Arkells, Davidson, Rard, and two other people. Arkells testified that Lowe was fired because of a "culmination of a series of things," including Lowe's lack of ability to perform his position, the perception that his role was unnecessary, and the alleged harassing statements.

Davidson characterizes the situation somewhat differently. According to him, by the time of the June 19, 2018 incident with Osterbeck, the decision to eliminate Lowe's position had already been made, and any behavioral issues with Lowe did not factor into that decision. Walbro contends that this difference in testimony between Arkells and Davidson is immaterial because the key reason for Lowe's termination was simply that the Area Manager position was no longer needed, and that the other issues were "peripheral" ones that would have been addressed only if the position were retained.

Lowe was fired on June 28, 2018. On that date, Davidson asked Lowe to come to Davidson's office, where Rard was also present. Davidson read from a prepared script, informing Lowe that his position was being eliminated. Lowe later testified that, at this meeting, the following exchange took place:

> I did ask Tom [Davidson] about why—why was I terminated? Was it my job? Was I not doing the job? ... And he just—basically he didn't answer me. He just said, well, you're kind of getting up there in years, you're at retirement age, you go one way and the company's going the other.

Rard denies that this exchange happened or that Davidson said anything to that effect. Davidson likewise denies that Lowe ever asked why he was being terminated.

*Lowe v. Walbro LLC*, 972 F.3d 827, 829–31 (6th Cir. 2020).

Plaintiff sued Defendant in 2018, alleging one count of age discrimination under Michigan's Elliot Larsen Civil Rights Act. ECF No. 1. Defendant moved for summary judgment, which this Court granted in 2019, finding that Plaintiff could not establish a prima facie case under either the direct or indirect evidence framework. ECF No. 29. Plaintiff appealed, ECF No. 31, and the Sixth Circuit reversed, finding Plaintiff established a prima facie case under the direct evidence mixed motive framework. *Lowe v. Walbro LLC*, 972 F.3d 827 (6th Cir. 2020). Accordingly, the Sixth Circuit remanded the case for further proceedings consistent with its Opinion. *Id.* Since then, a confluence of factors have led to multiple adjournments of the jury trial, *see* ECF Nos. 38; 44; 45; 47; 55; 65, but it is now scheduled to begin on October 24, 2023. ECF No. 75.

In anticipation of trial, Defendant has filed a Motion *in Limine* to exclude two categories of evidence: (1) any evidence related to Jake Germain, a younger employee Plaintiff asserts is similarly situated to him; and (2) any evidence related to Defendant's training program that was implemented in May 2019. ECF No. 57. Defendant asserts both categories of evidence are not relevant, and even if they were, their probative value is outweighed by the potential for unfair prejudice. *Id.* Plaintiff disagrees, arguing that both categories of evidence are relevant and not outweighed by unfair prejudice. ECF No. 73.

## II.

"A 'motion *in limine*' is any motion 'to exclude anticipated prejudicial evidence before the evidence is actually offered.'" *Good v. BioLife Plasma Servs., L.P.*, No. 1:18-CV-11260, 2022 WL 1837071, at *2 (E.D. Mich. June 3, 2022) (quoting *Louzon v. Ford Motor Co.*, 718 F.3d 556, 561 (6th Cir. 2013)). They are "designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial interruptions." *Id.* (same). Trial courts may "conditionally grant a motion in limine, leaving the underlying evidentiary issue open to be revisited at trial." *Fischer v. United*

*States*, No. 1:19-CV-13020, 2022 WL 2287922, at *2 n.2 (E.D. Mich. June 24, 2022) (citing *The Modern Workplace: Contemporary Legal Issues in Employment & Labor Law Local Panel Discussion*, 6 BELMONT L. REV. 245, 261–62 (2019)). A court's ruling on a pretrial motion *in limine* may be changed "at any point prior to or during the trial, as 'facts may . . . come to the district court's attention which it did not anticipate at the time of its initial ruling.'" *United States v. Householder*, No. 1:20-CR-77, 2022 WL 17600159, at *1 (S.D. Ohio Dec. 13, 2022) (quoting *United States v. Yannott*, 42 F.3d 999, 1007 (6th Cir. 1994)). Whether to grant a motion *in limine* falls within the sound discretion of the trial court. *Branham v. Thomas Cooley Law School*, 689 F.3d 558, 560 (6th Cir. 2012).

Under the Federal Rules of Evidence, "evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Unless expressly prescribed by another evidential rule, relevant evidence is admissible. FED. R. EVID. 402; *Frye v. CSX Transp., Inc.*, 933 F. 3d 591, 599 (6th Cir. 2019).

"[A] trial court may exclude relevant evidence if its probative value is substantially outweighed by the risk of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time or needlessly presenting cumulative evidence." FED. R. EVID. 403. But evidence is not excluded as unfairly prejudicial merely because it damages the party against whom it is offered. Rather, "unfair prejudice" under Rule 403, "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, an emotional one." *Old Chief v. United States*, 519 U.S. 172, 180 (1997).

### III.

Defendant seeks to exclude all testimony and evidence relating to Jake Germain, a Walbro employee Plaintiff asserts was similarly situated to him, and all evidence and testimony relating to Walbro's "trainee/apprenticeship program." ECF No. 57 at PageID.1114. Plaintiff argues that both are relevant and should be admissible. ECF No. 73.

### A.

Defendant first seeks to exclude all evidence and testimony about Germain, a Walbro employee who Plaintiff asserts was similarly situated to him.[1] ECF No. 57 at PageID.1118–21. Defendant asserts any evidence or testimony relating to Germain is irrelevant and unfairly prejudicial because Germain was not a similarly situated employee. *Id.* at 1119–20. Plaintiff

---

[1] Defendant points out that this Court previously determined Germain was *not* a similarly situated employee when evaluating Plaintiff's indirect evidence of age discrimination in its October 2019 Opinion. ECF No. 76 at PageID.1414; *see also Lowe v. Walbro LLC*, No. 18-12835, 2019 WL 5578101, at *5 (E.D. Mich. Oct. 29, 2019), *rev'd and remanded*, 972 F.3d 827 (6th Cir. 2020). And according to Defendant, the Sixth Circuit's Opinion did not disturb this Court's analysis of indirect evidence—including a determination about whether Jake Germain was similarly situated to Plaintiff—because it reached its decision by evaluating *only* direct evidence. ECF No. 76 at PageID.1414–15. But Defendant is mistaken. The Sixth Circuit's Opinion reversed this Court's earlier determination that Plaintiff could not demonstrate a prima facie case of age discrimination. And because Plaintiff can demonstrate a prima facie case, all the evidence this Court evaluated in its Opinion may be presented to the jury, whether direct or indirect, for the jury to reach its own conclusions. Indeed, as Michigan's Jury Instructions demonstrate, there is no distinction between the burden of proving discrimination by direct or indirect evidence. *See* MICH. MODEL CIV. JURY INSTRUCTIONS § 105.04 (Mich. Sup. Ct. 2020); *see also In re Lewis*, 845 F.2d 624, 634 (6th Cir. 1988) (finding Michigan's jury instruction "a clear and preferable statement of law," and noting that the *McDonell Douglass* framework for evaluating indirect evidence of discrimination "confuse[s] the jurors with legal definitions of the burdens of proof, persuasion and production and how they shift"); *Brown v. Packaging Corp. of Am.*, 338 F.3d 586, 592–93 (6th Cir. 2003) (collecting cases) (noting "most courts of appeals would agree that it is normally inappropriate to instruct the jury on the *McDonnell Douglas* analysis."). In sum, this Court's evaluation of Plaintiff's and Germain's job responsibilities in its October 2019 Opinion occurred in conjunction with its analysis of a legal standard that the jury will not be instructed on and is thus irrelevant. The jury may evaluate the evidence and reach its own conclusions about relevant direct *and* indirect evidence at trial. Indeed, it may reach the same conclusion this Court did in October 2019. Or it may not.

responds that Germain was a similarly situated employee, so evidence about him is relevant to determine whether Defendant treated Plaintiff differently because of his age. ECF No. 73 at PageID.1285. At bottom, the Parties' are asking this Court to determine whether Germain was similarly situated to Plaintiff.

"To sufficiently demonstrate similarly situated employees, plaintiffs must show that the proffered 'comparables' are similar in all respects." *O'Donnell v. City of Cleveland*, 838 F.3d 718, 727 (6th Cir. 2016) (quotation marks and citation omitted). The Sixth Circuit has "disapproved of a rigid standard," *Jackson v. FedEx Corp. Servs., Inc.*, 518 F.3d 388, 394 (6th Cir. 2008), and has held that a plaintiff must show that "all of the *relevant* aspects of his employment situation were 'nearly identical' to those of the [comparable employee's] employment situation." *O'Donnell*, 838 F.3d at 727 (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)) (emphasis added).

Defendant asserts Germain and Plaintiff are not similarly situated because Germain is a blow molding technician who reported to Rick Osterbeck and Plaintiff was an area manager who reported to Tom Davidson. ECF No. 57.

But Germain was not *always* a blow molding technician. Importantly, when Germain started working for Walbro in 2012, he worked for the "production team" while he was studying HVAC, a specialization in which Plaintiff is certified. ECF No. 20-7 at PageID.528; ECF No. 20-4 at PageID.437. According to Osterbeck's deposition testimony, Germain, like Plaintiff, had little to no blow molding experience. ECF No. 20-7 at PageID.528. But Osterbeck testified that, at some unspecified time, Defendant "was trying to get [Germain] to quit and they wanted to fire him and [Osterbeck] wanted somebody to help [him]. And so [Defendant] said, 'You want to help, take [Germain].'" *Id.* at PageID.529.

Yet that is all the record says about Germain. It is not clear what Germain did nor who he reported to when he began working for Walbro in 2012 or during any of the years that followed before he was trained in blow molding. Nor is it clear when or why Defendant wanted to fire him, when Osterbeck began training him, or what other educational and vocational training he had. What is clear to this Court at this time is that both Plaintiff and Germain had no previous blow molding experience and, at some point, Defendant wanted to fire both Plaintiff and Germain. Yet Defendant only kept one of them—the younger one—to train in blow molding. True, they had different positions at Walbro, but the specific details of Germain's position *before* he became a blow molding technician are not clear. And the record suggests both had comparable blow molding experience, which is relevant, as Defendant asserts it fired Plaintiff because his position had "no involvement with the blow mold operations," which comprised a majority of Defendant's operations. ECF No. 28 at PageID.995.

In sum, there are outstanding questions about Germain's employment with Defendant that must be resolved by the jury before determining whether Germain and Plaintiff were similarly situated. And those facts are best presented at trial. Indeed, evidence about Jake Germain is relevant to determine whether Germain was similarly situated to Plaintiff so as to make it more likely that Plaintiff was treated differently than Germain *because of* his age.

And such evidence is not overly prejudicial. Defendant asserts any evidence relating to Germain would be overly prejudicial because it would "show that Walbro treated 'a younger' employee more favorably by not terminating his employment." ECF No. 57 at PageID.1120–21. "But evidence is not excluded as being unfairly prejudicial merely because it damages the party against whom it is offered." *Trapp v. Fed. Express Corp.*, No. 1:21-CV-11271, 2022 WL

17361285, at *6 (E.D. Mich. Dec. 1, 2022) Thus, Defendant's Motion will be denied without prejudice at this time to the extent it seeks to exclude any evidence relating to Jake Germain.

**B.**

Defendant next seeks to exclude any evidence of its "trainee/apprentice program" that was implemented 11 months *after* the termination of Plaintiff's employment. ECF No. 57 at PageID.1121. Plaintiff responds that evidence of Defendant's trainee/apprentice program is relevant because it shows "that . . . Defendant was willing to train certain individuals in blow molding but was not willing to offer Plaintiff the same." ECF No. 73 at PageID.1287. But blow-molding training existed before Plaintiff was terminated. *See* ECF No. 20-5 at PageID.507 (noting Davidson informed Plaintiff of blow-molding trainings Plaintiff "could take part in."). The implementation of an additional training program that launched, at earliest, 11 months after Plaintiff's termination does not make it more or less likely that Defendant could have provided Plaintiff with blow-molding training in 2018 instead of terminating his employment. *See* FED. R. EVID. 401. Thus, any evidence of Defendant's trainee/apprentice program implemented in May 2019 is inadmissible as irrelevant. FED. R. EVID. 402.

Accordingly, Defendant's Motion will be granted in part to the extent it seeks to exclude any evidence related to its trainee/apprentice program that commenced in May 2019.

**IV.**

Accordingly, it is **ORDERED** that Defendant's Motion *in Limine* to Exclude Testimony and Evidence Relating to Non-Similarly Situated Individuals, ECF No. 57, is **GRANTED IN PART**. It is granted to the extent it seeks to exclude any evidence of Defendant's trainee/apprentice program implemented in May 2019.

- 10 -

Further, it is **ORDERED** that Defendant's Motion *in Limine* to Exclude Testimony and Evidence Relating to Non-Similarly Situated Individuals, ECF No. 57, is **DENIED WITHOUT PREJUDICE IN PART**. It is denied without prejudice to the extent it seeks to exclude any evidence of Jake Germain.

Dated: September 14, 2023           s/Thomas L. Ludington
                                    THOMAS L. LUDINGTON
                                    United States District Judge