UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

KENNETH JAMES LOWE,

      Plaintiff,

v.

WALBRO LLC,

      Defendant.
_____/

Case No. 1:18-cv-12835

Honorable Thomas L. Ludington
United States District Judge

**OPINION AND ORDER (1) GRANTING DEFENDANT'S MOTION FOR JUDGMENT AS A MATTER OF LAW OR FOR A NEW TRIAL, (2) VACATING OCTOBER 2023 JUDGMENT, (3) ENTERING JUDGMENT FOR DEFENDANT, (4) CONDITIONALLY GRANTING A NEW TRIAL, (5) DENYING AS MOOT DEFENDANT'S MOTION TO AMEND JUDGMENT AND PLAINTIFF'S MOTION FOR ATTORNEY FEES, AND (6) DENYING AS MOOT DEFENDANT'S MOTION FOR STAY OF EXECUTION OF JUDGMENT**

For over 40 years, Plaintiff Kenneth James Lowe worked for Defendant Walbro LLC. Then, in 2018, Defendant terminated Plaintiff's employment. Plaintiff sued Defendant, arguing he was terminated because of his age, in violation of Michigan's Elliott Larsen Civil Rights Act. Defendant asserted Plaintiff was not terminated because of his age but because Plaintiff's skills no longer matched the business, which had changed, and because Plaintiff's role was no longer financially justified.

After six days of trial, the jury returned a verdict for Plaintiff, finding he was entitled to $1,004,890.00 in economic damages and $1,300,000.00 in noneconomic damages. Defendant now challenges the jury's verdict and seeks judgment as a matter of law or, alternatively, a new trial, arguing that Plaintiff did not present sufficient evidence permitting a reasonable juror to find that age was a motivating factor in Defendant's decision to terminate Plaintiff's employment. And, if

such relief is denied, Defendant seeks to amend the judgment to decrease the amount of economic and noneconomic damages the jury awarded Plaintiff.

As explained below, Defendant's Motion for Judgment as a Matter of Law will be granted because the evidence Plaintiff presented *at trial*—notably different than the evidence presented at summary judgment—was insufficient for the case to be submitted to the jury. Thus, judgment as a matter of law is required, so the November 2023 Judgment will be vacated, and Judgment will be entered in favor of Defendant.

## I.

### A.

The Sixth Circuit neatly summarizes the relevant facts of this case:

> [Kenneth] Lowe, who was born in 1958, began working for Walbro as a stock handler at the age of 18. Over the course of his 41-year career with the company, he was promoted on several occasions. At the time that he was fired, he held the title of Area Manager, a position that he assumed in 2014.
>
> Walbro describes itself as "a global market leader in engine management and fuel systems for the outdoor power equipment, recreational, marine, and personal transportation markets." It is headquartered in Arizona, but has offices in Cass City, Michigan (where Lowe worked throughout his career3with Walbro) as well as in various other countries.
>
> As Area Manager, Lowe was responsible for managing the maintenance of the entire Cass City facility. His responsibilities included maintaining blow-molding machines, assembly-line machines, and robotics equipment, as well as overseeing the janitorial staff and maintaining other areas of the plant.
>
> According to Walbro, the work of the Cass City facility began to change significantly around 2009 or 2010. Previously, the plant had largely been used to produce carburetors, but later it evolved to focus primarily on blow molding (a process used to manufacture hollow plastic products) and robotics.
>
> In June 2016, Walbro hired 35-year-old Tom Davidson as General Manager of the Cass City facility. Davidson testified that, soon after he assumed this role, he noticed that Lowe's understanding of robotics and blow molding was limited. According to Davidson, Lowe relied heavily on two subordinates—Rick Osterbeck and Nate Windsor—for the maintenance of the blow-molding machines and

robotics equipment, and Lowe did not attempt to improve his own abilities in these areas.

Approximately six months later, Davidson removed Osterbeck and Windsor from reporting to Lowe. Davidson said that he did so because he believed that Lowe was "overwhelmed." Osterbeck and Windsor instead reported directly to Davidson after this change was made. Lowe was left managing only one portion of the building as well as conducting general facility maintenance. Davidson testified that Lowe's performance did not improve following this reorganization.

Lowe alleges that, throughout the roughly two-year period of time that he and Davidson overlapped at Walbro, Davidson made a series of disparaging statements about Lowe's age. For example, in October 2016, Lowe received an award recognizing his 40 years of employment with Walbro. According to Lowe, after he received the award and sat back down, Davidson said, at a volume where others in the room could hear him: "Old man, you been here longer than I am old. Aren't you ready to retire?" Lowe further testified that Davidson made "at least a dozen" statements about Lowe's age over the time period when both men were employed at the company. These included comments such as referring to Lowe as an "[o]ld man" and saying that he was "losing a step."

In March 2018, Walbro hired Debby Rard to serve as the Senior Human Resources Manager at the Cass City facility. Rard testified that, soon after she began working for Walbro, she was reviewing the company's organizational charts when she noticed that Lowe was serving as the Area Manager but had only a few janitors reporting directly to him. She concluded that the retention of this position did not make good business sense for Walbro and recommended to the company's leadership that Lowe's position be eliminated.

Rard also testified that, around this time, she began to receive complaints that Lowe had engaged in inappropriate behavior, such as bullying, vulgarity, and sexual innuendoes. She created a spreadsheet titled "Observed Behavior - Ken Lowe, Facilities Manager CAS" that catalogued six incidents of alleged inappropriate behavior regarding Lowe, which spanned from 2015 to 2018. The final incident listed on the spreadsheet took place on June 19, 2018 and was reported by Osterbeck. Osterbeck stated that, at a meeting involving Lowe, Osterbeck, and another employee, Lowe had said: "Rick, you suck Bill raw" and made an "inappropriate gesture."

Around this time—although the exact date is not clear from the record—Walbro made the final decision to terminate Lowe. According to Adam Arkells, Walbro's Vice President of Human Resources, this was a group decision, made by Arkells, Davidson, Rard, and two other people. Arkells testified that Lowe was fired because of a "culmination of a series of things," including Lowe's lack of ability to perform his position, the perception that his role was unnecessary, and the alleged harassing statements.

> Davidson characterizes the situation somewhat differently. According to him, by the time of the June 19, 2018 incident with Osterbeck, the decision to eliminate Lowe's position had already been made, and any behavioral issues with Lowe did not factor into that decision. Walbro contends that this difference in testimony between Arkells and Davidson is immaterial because the key reason for Lowe's termination was simply that the Area Manager position was no longer needed, and that the other issues were "peripheral" ones that would have been addressed only if the position were retained.
>
> Lowe was fired on June 28, 2018. On that date, Davidson asked Lowe to come to Davidson's office, where Rard was also present. Davidson read from a prepared script, informing Lowe that his position was being eliminated. Lowe later testified that, at this meeting, the following exchange took place:
>
>> I did ask Tom [Davidson] about why—why was I terminated? Was it my job? Was I not doing the job? ... And he just—basically he didn't answer me. He just said, well, you're kind of getting up there in years, you're at retirement age, you go one way and the company's going the other.
>
> Rard denies that this exchange happened or that Davidson said anything to that effect. Davidson likewise denies that Lowe ever asked why he was being terminated.
>
> *Lowe v. Walbro LLC*, 972 F.3d 827, 829–31 (6th Cir. 2020).

Plaintiff sued Defendant in 2018, alleging one count of age discrimination under Michigan's Elliot Larsen Civil Rights Act. ECF No. 1. Defendant moved for summary judgment, which this Court granted in 2019, finding that the evidence Plaintiff identified did not establish a prima facie case under either the direct or indirect evidence frameworks. ECF No. 29. Equally important, this Court found that Defendant met its burden of articulating a legitimate, nondiscriminatory rationale for the adverse employment action. *Id.* That is, Defendant's business had evolved from producing carburetors to a blow molding and robotics business, requiring skills that Plaintiff did not adequately learn, so Defendants concluded that Plaintiff's position was no longer economically justified. *Id.* Importantly, all Parties conceded Plaintiff's position was not filled after he was terminated. *Id.*

Plaintiff appealed. ECF No. 31. The Sixth Circuit reversed, finding Plaintiff established a prima facie case under the direct evidence mixed motive framework based upon Davidson's alleged statement that Plaintiff's employment was being terminated because Plaintiff was "kind of getting up there in years" and was "at retirement age." *Lowe v. Walbro LLC*, 972 F.3d 827 (6th Cir. 2020). The Sixth Circuit also rejected Defendant's argument that Plaintiff's position was no longer needed based on Plaintiff's recollection of Defendant's age-based remarks. *Id.* Accordingly, the Sixth Circuit remanded the case for further proceedings consistent with its Opinion. *Id.*

**B.**

A jury trial began on October 24, 2023. *See* ECF No. 75 at PageID.1412. Plaintiff called nine witnesses, outlined below:

1. Debra Rard, human resources manager at Walbro, in 2018. ECF No. 116 at PageID.2486.
2. John Graves, operations director at Walbro from 2011 to 2014. ECF No. 116 at PageID.2584.
3. Robert Hartwick, manufacturing engineering manager and operations manager at Walbro until 2013. ECF No. 116 at PageID.2630.
4. Greg Creighton, plant manager at Walbro from December 2014 to May 2016. ECF No. 117 at PageID.2679.
5. Thomas Davidson, general manager at Walbro from June 2016 to September 2018. ECF No. 117 at PageID.2694, 2755
6. Kenneth Lowe, Plaintiff. ECF No. 117 at PageID.2812.
7. David MacPherson, PhD, labor economist. ECF No. 118 at PageID.2993.
8. Sherry Flemington, Plaintiff's fiancé. ECF No. 118 at PageID.3028
9. Dr. Gerald Shiener, psychiatrist. ECF No. 119 at PageID.3069

Defendant called three witnesses:

1. Elissa P. Benedek, forensic psychiatrist. ECF No. 119 at PageID.3133.
2. Tim Grifka, vice president of global quality and program management at Walbro from 2016 to present. ECF No. 119 at PageID.3173.
3. Mark Johnson, senior technician at Walbro since 2014. ECF No. 119 at PageID.3185–86.

Importantly, the direct evidence the Sixth Circuit identified in its 2020 Opinion—Plaintiff's testimony that Davidson told him he was being terminated *because* Plaintiff was "kind of getting up there in years" and was "at retirement age"—was *not* presented to the jury during the trial. To the contrary, Plaintiff testified that Davidson said *nothing* about age or retirement when Plaintiff was terminated. ECF No. 118 at PageID.2931. And Davidson himself testified that he did not mention age or retirement when Plaintiff was terminated. ECF No. 117 at PageID.2791.

Plaintiff did, however, testify that Davidson made several comments about his age,[1] beginning in October 2016. First, during a ceremony recognizing Plaintiff's 40 years of service to Defendant, Plaintiff testified that Davidson said, "Old man, you been here longer than I have been alive. Are you ready to retire?" ECF No. 117 at PageID.2829. Plaintiff further testified that he did not take the comment seriously as he viewed it "as a joke at that time." *Id.* Second, Plaintiff testified that he recalled Davidson saying, "let the old guy do it," referring to Plaintiff. ECF No. 118 at PageID.2865; 2973.

At the close of proofs, Defendant moved for judgment as a matter of law. ECF No. 119 at PageID.3123–31. This Court denied Defendant's motion, noting that there had been some testimony that Davidson made some comments relating to Plaintiff's age. *Id.* This Court also noted that there was some testimony that age-related remarks had been made and, importantly, that "the Court of Appeals agrees that there was a jury issue," referring to the Sixth Circuit's conclusion that there was—at summary judgment—direct evidence of age discrimination to be submitted to the jury. *Id.* at PageID.3131. Defendant's Motion for a Judgement as a Matter of Law, ECF No. 125, was taken under advisement under Federal Rule of Criminal Procedure 50(b).

---

[1] Davidson denies making any of these comments, but all facts are appropriately construed in Plaintiff's favor.

Accordingly, the case was submitted to the jury, which concluded that Plaintiff had "proved by a preponderance of the evidence that age" was a motive or reason that "made a difference in Defendant Walbro LLC's decision to discharge Plaintiff." ECF No. 114 at PageID.2460 (citing ECF No. 111 at PageID.2446). The jury determined that Plaintiff was entitled to $1,004,890.00 in economic damages and $1,300,000.00 in noneconomic damages. ECF No. 114 at PageID.2461.

Now, Defendant challenges the jury's conclusions, arguing Plaintiff did not satisfy his burden of proof, so the evidence does not support the jury's verdict. ECF No. 125; 126. To that end, Defendant seeks either judgment as a matter of law in its favor, ECF No. 125, a new trial, *see* ECF No. 125; 126, or an amended judgment with reduced damages, *see* ECF No. 126. Plaintiff responds that he carried his burden of proof, and the jury's verdict, including damages, was supported by some evidence. *See* ECF Nos. 131; 132.

## II.

When a party seeks judgment as a matter of law under Civil Rule 50(b), federal courts sitting in diversity "use the standards for a judgment as a matter of law applicable under the law of the forum state." *Ventas, Inc. v. HCP, Inc.*, 647 F.3d 291, 319 (6th Cir. 2011) (quotation omitted). Here, Michigan law governs, and Michigan courts use the terms "directed verdict" and "judgment notwithstanding the verdict" (JNOV) rather than 'judgment as a matter of law.' *Brocklehurst v. PPG Indus., Inc.*, 123 F.3d 890, 984 n. 3 (6th Cir. 1997).

"JNOV is only appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the moving party is entitled to judgment as a matter of law." *Nahshal v. Fremont Ins. Co.*, 922 N.W.2d 662 (Mich. Ct. App. 2018). "If reasonable persons, after reviewing the evidence in the light most favorable to the nonmoving party, could honestly reach different

conclusions about whether the nonmoving party established his or her claim [or defense], then the question is for the jury." *Id.* (quotation marks and citation omitted).

### III.

### A.

This case presents an unusual set of circumstances under which the evidence evaluated at summary judgment was *not* the same evidence the jury heard during trial. At summary judgment, the Sixth Circuit Court of Appeals identified specific evidence—an alleged statement Davidson made to Plaintiff *at the termination meeting*—as direct evidence of age discrimination. *See Lowe v. Walbro LLC*, 972 F.3d 827, 833 (6th Cir. 2020) ("We have no difficulty concluding that the 'you're kind of getting up there in years, you're at retirement age' comment constitutes direct evidence of age discrimination."). Accordingly, the Sixth Circuit remanded the case for the jury to weigh the evidence and determine whether age was a motivating factor in Defendant's decision to terminate Plaintiff. *Id.* at 837.

Yet that deposition testimony that the Sixth Circuit identified as direct evidence of a factual question when examining the record motion for summary judgment was not *presented to the jury* during the trial. *See generally* ECF Nos. 116; 117; 118; 119; 120; *see also* ECF No. 137 at PageID.4036 (noting that this "direct evidence" identified by the Sixth Circuit was never presented to the jury). To the contrary, Plaintiff testified that Davidson did not say *anything* about his age or retirement during the termination meeting. ECF No. 118 at PageID.2931. And Plaintiff did not present any other *direct evidence* to the jury at trial.[2] Thus, there was no direct evidence of age

---

[2] Direct evidence, "if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Sniecinski v. BCBS of Mich.*, 666 N.W.2d 186, 192–93 (Mich. 2003) (quoting *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 520 (Mich. 2001)). And "stray remark[s] . . . outside the context of the termination decision is not necessarily probative an employer's discriminatory intent," and thus is not necessarily direct evidence of discrimination.

discrimination for the jury to consider, so the evidence Plaintiff presented at trial must be evaluated under the indirect-evidence framework to determine whether Plaintiff presented enough evidence to establish a *prima facie* case.

Michigan law provides that in "claims brought under the [ELCRA], the *McDonnell Douglas* approach" applies when "assessing motions for summary disposition *and [for] directed verdict* in cases involving circumstantial evidence of discrimination." *Hazzle v. Ford Motor Co.*, 628 N.W.2d 515, 523 (2001); *see also Hecht v. Nat'l Heritage Acads., Inc.*, No. 306870, 2014 WL 5462560, at *5 (Mich. Ct. App. Oct. 28, 2014), *aff'd in part, rev'd in part*, 886 N.W.2d 135 (2016) (noting "the need for" *McDonnell Douglas* analysis is only present when considering summary judgment motions *and* directed verdict motions); *Hrapkiewicz v. Wayne State Univ. Bd. of Governors*, No. 328215, 2017 WL 947604, at *11 (Mich. Ct. App. Mar. 9, 2017) (Servitto, J., dissenting) (suggesting where a plaintiff does not establish a prima facie of age discrimination, directed verdict is proper).

Notably, if this Court were applying *federal law*, whether the plaintiff established a *prima facie* case under the *McDonnell Douglass* framework—the standard applied pretrial—would not necessarily be dispositive after a full trial on the merits. *See Noble v. Brinker Int'l, Inc.*, 391 F.3d 715, 727 (6th Cir. 2004) ("[A] court may not, after a trial on the merits, grant judgment as a matter of law *merely because* the plaintiff failed to establish a *prima facie* case, but when the indirect

---

*Wolfgang v. Dixie Cut Stone & Marble, Inc.*, No. 285001, 2010 WL 199595, at *2 (Mich. Ct. App. Jan. 21, 2010) (citing *Krohn v. Sedgwick James of Mich., Inc.*, 624 N.W.2d 212 (2001)). To determine whether comments made by a supervisor are direct evidence of discrimination or merely stray remarks, Michigan courts consider "(1) whether the remark was made by a person involved in the termination decision, (2) whether the remark was made during the decision making process, (3) whether the remark was vague, ambiguous, or isolated, and (4) whether the remark was proximate in time to the termination. *Id.* Considering these factors, the remarks Plaintiff testified Davidson made to him are not direct evidence but stray remarks.

method of proof is the only remaining avenue by which a plaintiff can establish his claim of intentional discrimination, it is necessary and appropriate for a court to evaluate the evidence supporting the plaintiff's *prima facie* case." (emphasis in original)); *Aboubaker v. Cnty. of Washtenaw*, No. 11-13001, 2015 WL 1245755, at *3 (E.D. Mich. Mar. 18, 2015) (explaining that under Sixth Circuit precedent, reviewing courts "should not focus on the elements of the *prima facie* case," but that the Sixth Circuit has also recognized that the question of whether the plaintiff made out a prima facie case *may be relevant* to the post-trial analysis (quoting *Moore v. Freeman*, 355 F.3d 558, 562 (6th Cir. 2004) (internal quotations omitted)).

But Plaintiff's claims arise under Michigan law, so Michigan law must be applied. Accordingly, this Court turns to evaluating whether Plaintiff presented evidence *at trial* to establish a *prima facie* case under the indirect-evidence framework.

**B.**

A *prima facie* indirect-evidence case requires the plaintiff to prove he (1) "belongs to a protected class," (2) "suffered an adverse employment action," (3) "was qualified for the position," and (4) was "discharged under circumstances that give rise to an inference of unlawful discrimination." *Williams v. Dep't of Health & Hum. Servs.*, No. 355203, 2021 WL 5027962, at *3 (Mich. Ct. App. Oct. 28, 2021) (quoting *Lytle v. Malady*, 579 N.W.2d 906 (Mich. 1998)).

Michigan Courts have noted that there are "multiple ways of proving the ultimate question of discrimination in a circumstantial evidence case." *Hecht v Nat'l Heritage Academies, Inc*, 886 N.W.2d 135 (2016). But although there is no "specific manner" in which the plaintiff is "required to show circumstances giving rise to an inference of discrimination," to satisfy the fourth element, the plaintiff must "present evidence that the employer's actions, if otherwise unexplained, are more likely than not based on the consideration of impermissible factors" such as age. *Hazle v. Ford*

*Motor Co.,* 628 N.W.2d 515 (Mich. 2001) (quotation marks and citation omitted). Most commonly, plaintiffs satisfy this fourth element by demonstrating they were either (1) treated differently from similarly situated individuals outside the protected class, or (2) replaced by a younger employee under circumstances giving rise to an inference of discrimination. *See Parhar v. Dart Container Corp.*, No. 258471, 2006 WL 664165, at *2 (Mich. Ct. App. Mar. 16, 2006) (citing *Hazle*, 628 N.W.2d at 521).

"If the plaintiff succeeds in establishing a prima facie [indirect-evidence] case," then the burden "shifts to the employer to articulate a legitimate, nondiscriminatory rationale." *In re Rodriguez*, 487 F.3d 1001, 1008 (6th Cir. 2007) (citing *Hazle*, 628 N.W.2d at 521–22). If the employer does so, "the burden shifts back to the plaintiff to demonstrate that the articulated reason is a mere pretext." *Id.* (citing *Hazle*, 628 N.W.2d at 522). The employer's proffered reasons are pretext if they "(1) had no basis in fact, (2) were not the actual factors motivating the decision, *or* (3) were insufficient to justify the decision." *Cuddington v. United Health Servs., Inc.,* 826 N.W.2d 519, 526 (Mich. Ct. App. 2012) (per curiam) (emphasis added) (citing *Dubey v. Stroh Brewery Co.*, 462 N.W.2d 758, 760 (Mich. Ct. App. 1990) (per curiam)).

### C.

Considering the evidence Plaintiff presented at trial, it did not establish the fourth element of a *prima facie* case under the indirect-evidence framework. Thus, judgment as a matter of law for Defendant is required.

There is no dispute that Plaintiff established the first three elements of his prima facie case. He is a protected class member under the ELCRA, his employment was terminated, and he was qualified for the area manager position. However, Plaintiff did not establish circumstances giving

rise to an inference of discrimination against Plaintiff because of his age at trial. *See Hazle v. Ford Motor Co.,* 628 N.W.2d 515, 521 (Mich. 2001).

As discussed above, the two most common ways for plaintiffs to establish "circumstances giving rise to an inference of discrimination" are by identifying a similarly situated person outside of his protected class who was treated differently or showing that the position was filled by someone younger. *See supra* Part B. At trial, Plaintiff did not identify *any* similarly situated person outside his protected class who was treated differently.[3] And his position was not filled by a younger employee. To the contrary, Plaintiff's position was not filled by *anyone*, because the area manager position was eliminated.

Thus, the *only* evidence Plaintiff presented at trial in an attempt to establish "circumstances giving rise to an inference of discrimination" are the comments allegedly made by Davidson to Plaintiff at the 40-year recognition ceremony a year-and-a-half before his termination and the other unspecified instances during which Davidson referred to Plaintiff as "the old guy" between October 2016 and June 2018. And absent some causal connection, these comments alone are insufficient to satisfy the fourth element of a *prima facie* case under the indirect-evidence framework. *See Major v. Vill. of Newberry*, 892 N.W.2d 402, 414 (Mich. Ct. App. 2016) ("In cases of both direct and indirect evidence, a plaintiff must establish a causal link between the discriminatory animus and the adverse employment decision." (internal quotations and citations omitted)).

---

[3] Notably, two months before trial, this Court determined that Plaintiff *could* present evidence about how a younger, similarly situated employee—Jake Germain—was treated by Defendant. *See* ECF No. 88 at PageID.1595–98 (concluding that "evidence about Jake Germain is relevant to determine whether Germain was similarly situated to Plaintiff so as to make it more likely that Plaintiff was treated differently than Germain because of his age."). Yet no evidence related to Germain was presented at trial.

Indeed, all Michigan caselaw that consider whether comments made by a supervisor constitute circumstances giving rise to an inference of discrimination do so *in conjunction with* other evidence of how a similarly situated person was treated *or* evidence that someone outside the protected class replaced the terminated employee. *See Gorbe v. City of Lathrup Village*, 2023 WL 326103 at *5 (Mich. Ct. App. Jan. 19, 2023) (holding supervisor's remarks about the plaintiff's age "*together with other evidence*, may support an inference of discrimination." (emphasis added)); *Williams v. Dep't of Health & Hum. Servs.*, No. 355203, 2021 WL 5027962, at *6 (Mich. Ct. App. Oct. 28, 2021) (finding a "discriminatory atmosphere" *coupled with* evidence that similarly situated employees were treated differently was enough to establish the fourth element of a prima facie ELCRA claim where the "discriminatory atmosphere" was a pervasive pattern *close in time* to the adverse employment action); *Campbell v. Human Servs. Dept.*, 780 N.W.2d 586, 598 (Mich. Ct. App. 2009) (finding the fourth element satisfied where "background evidence of discrimination" *and* evidence that similarly situated employees outside the protected class were routinely promoted over the plaintiff).

The offhand comments allegedly made by an employee's supervisor *alone* are not sufficient to show circumstances giving rise to an inference of age discrimination, especially when the alleged comments are remote in time from Plaintiff's termination and not, in fact, made about Plaintiff's termination. Without evidence connecting these comments *to Plaintiff's termination in June 2018*, Plaintiff has not established circumstances giving rise to an inference of age discrimination. *See Sniecinski v. Blue Cross & Blue Shield of Michigan*, 666 N.W.2d 186, 196 (2003) ("Mere speculation or conjecture is insufficient to establish reasonable inferences of causation" in employment-discrimination cases.).

In sum, the evidence presented at trial demonstrated that Plaintiff dedicated 42 years of his life to Defendant and that after those 42 years, Defendant did not reciprocate. Indeed, as Plaintiff's Counsel argued, Walbro disregarded the loyalty and respect Plaintiff had invested in Walbro's business during his career. In other words, Defendant did treat Plaintiff poorly, but the evidence presented at trial did *not* demonstrate that the termination of his employment was *motivated by* his age. And absent any such evidence, Plaintiff's claim falls short of the required burden of proof. Accordingly, Defendant's Motion for Judgment as a Matter of Law, ECF No. 125, will be granted, the October 2023 Judgment, ECF No. 114, will be vacated, and judgment will be entered in favor of Defendant.

### IV.

But this Court's work is not done. Because Defendant's Motion for Judgment as a Matter of Law will be granted, this Court must now conditionally rule on Defendant's motions for a new trial. *See* ECF Nos. 125; 126. Under Civil Rule 50(c)(1), when a district court grants a motion for judgment as a matter of law, "it must also conditionally rule on any motion for a new trial by determining whether a new trial should be granted if the judgment is later vacated or reversed." FED. R. CIV. P. 50(c)(1); *Crankpark, Inc. v. Rogers Group, Inc.*, 821 F. 3d 723, 737 (6th Cir. 2016). This Court will conditionally grant Defendant's motion for a new trial.

Under Civil Rule 59, this Court may "on motion, grant a new trial . . . for any reason for which a new trial has heretofore been granted in an action at law in federal court." FED. R. CIV. P. 59(a)(1)(A). The Sixth Circuit has interpreted this rule to permit a new trial "when a jury has reached a seriously erroneous result as evidenced by: (1) the verdict being against the weight of the evidence; (2) the damages being excessive; or (3) the trial being unfair to the moving party in

some fashion, i.e., the proceedings being influenced by prejudice or bias." *Holmes v. City of Massillon*, 78 F.3d 1041, 1045–46 (6th Cir. 1996).

Two of those reasons justify a new trial in this case. First, as explained, the jury's verdict was against the great weight of the evidence. *See supra* Section III.B. Second, the jury's damages award was excessive. In this diversity case, Michigan law applies in evaluating the propriety of the jury's verdict. *See Miller v. Alldata Corp.*, 14 F. App'x 457, 466 (6th Cir. 2001). Under Michigan law, a verdict is excessive "if the amount awarded is greater than the highest amount the evidence will support." *Palenkas v. Beaumont Hosp.*, 443 N.W.2d 354, 356 (Mich. 1989). Three factors assist this analysis: whether the verdict (1) was the result of "improper methods, prejudice, passion, partiality, sympathy, corruption, or mistake of law"; (2) was "within the limits of what reasonable minds would deem just compensation for the injury sustained"; and (3) was the amount awarded in a similar case "within the state or other jurisdictions." *Gilbert v. DaimlerChrysler Corp.*, 685 N.W.2d 391, 400 (Mich. 2004).

Here, the trial record does not support the jury's damages award. Take, for example, the jury's noneconomic award of $1,300,000. *See* ECF No. 111 at PageID.2447–48. True, the record supports that when Plaintiff lost his job, it disturbed, embarrassed, and saddened him—even depressed him, according to his retained expert, Dr. Gerald Shiener. *See* ECF Nos. 117 at PageID.2842–44, 2856–57; 119 at PageID.3081–95; 118 at PageID.3033–39. And if Plaintiff were to prevail on the merits, the evidence would support the jury's verdict that his distress warrants some compensation. But the record does not support the proposition that Plaintiff's distress reasonably justifies a $1,300,000 verdict. Plaintiff denied that he sought psychological treatment. ECF No. 118 at PageID.2888–92; *see also* ECF No. 119 at PageID.3115, 3118. He denied that he sought counseling. ECF No. 118 at PageID.2888–92. He denied that a medical professional

prescribed him medication for distress. *Id.*; *see also* ECF No. 119 at PageID.3118. And he testified that he did not feel he needed professional treatment and self-managed. *See* ECF No. 118 at PageID.2888–92, 2979–80. In the end, this lack of supporting evidence for the jury's award suggests an impermissible partial and punitive design. *See, e.g., Weber v. Infinity Broad. Corp.*, No. 02-74602, 2005 WL 3726303, at *6, *10 (E.D. Mich. Dec. 14, 2005) (finding excessive a $2,000,000 noneconomic jury award "when the employee never consulted or treated with any psychiatrist, psychologist or mental health care professional, and that she never felt the need to do so.").

At bottom, the jury's verdict was against the great weight of the evidence and contemplates damages that exceed the proofs at trial such that a new trial is warranted under Civil Rule 59 if judgment as a matter of law in favor of Defendant is reversed or vacated. And so this Court holds it would conditionally grant Defendant's motions for a new trial, ECF Nos. 125; 126, if the present Judgment is later vacated or reversed.

## V.

Accordingly, it is **ORDERED** that Defendant's Motion for Judgment as a Matter of Law, ECF No. 125, is **GRANTED**. To the extent this Motion, ECF No. 125, alternatively seeks a new trial, it is **CONDITIONALLY GRANTED.**

Further, it is **ORDERED** that the Judgment, ECF No. 114, is **VACATED**.

Further, it is **ORDERED** that judgment is **ENTERED** in favor of Defendant.

Further, it is **ORDERED** that Defendant's Motion to Amend Judgment, ECF No. 126, is **DENIED AS MOOT**.

Further, it is **ORDERED** that Plaintiff's Motion for Attorney's Fees, ECF No. 122, is **DENIED AS MOOT**.

Further, it is **ORDERED** that Defendant's Motion for Stay of Execution of Judgment, ECF No. 138, is **DENIED AS MOOT**.

**This is a final order**.

Dated: October 22, 2024   s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge